NOT FOR PUBLICATION                                        (Docket Nos. 42 & 51)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |  |
|---|---|---|
| RANDOLPH CARSON, | : | |
|  | : | |
| Plaintiff, | : | Civil No. 07-3588 (RBK/AMD) |
|  | : | |
| v. | : | **OPINION** |
|  | : | |
| RICHARD MULVIHILL, et al., | : | |
|  | : | |
| Defendants. | : | |

**KUGLER**, United States District Judge:

This matter comes before the Court on a motion by Defendants Richard Mulvihill, Gary Merline, Eric Nilson, and County of Atlantic (collectively, "County Defendants"), as well as a motion by Defendants Inez Hubbard, M.D. and CFG Health Systems, LLC (collectively, "CFG Defendants") for summary judgment on Plaintiff Randolph Carson's ("Plaintiff") claims brought pursuant to 42 U.S.C. § 1983.  Plaintiff's Complaint includes allegations of failure to maintain adequate prison conditions, denial of adequate medical care, and excessive use of force.  For the reasons expressed below, the Court will grant both motions.

**I.    BACKGROUND**

Plaintiff was convicted on criminal charges in New Jersey Superior Court in 2004.  The charges were subsequently overturned, and Plaintiff was transferred to the Atlantic County Justice Facility ("ACJF"), where he currently resides awaiting retrial.  Plaintiff's claims in this case arise out of the conditions of his pre-trial detention at the ACJF.

1

Plaintiff is paralyzed from the waist down and relies on a standard model, self-propelled wheelchair without footrests to move about the prison.[1] Being wheelchair-bound in jail causes Plaintiff no small amount of difficulty. He is segregated from the rest of the inmate population in a special medical unit (the "Medical Unit"). Within the small confines of his single occupancy cell, he often has difficulty maneuvering, especially when the cell is temporarily occupied by another inmate. He has difficulty transferring himself to other locations, particularly to the chair located in the disabled shower facilities. The lack of footrests on Plaintiff's wheelchair causes him to drag his feet along the floor as he moves about the prison, resulting in pain, soreness, and discomfort. The difficulty he experiences moving in this manner frequently deters him from taking advantage of outdoor recreational opportunities.

In addition to being in a wheelchair, Plaintiff also suffers from a congenital heart condition, known as dextrocardia. This condition causes him shortness of breath, which is exacerbated by the manual operation his wheelchair requires. Plaintiff takes medication to address his heart condition as well as to address asthma and high blood pressure.

In May of 2007, Plaintiff wrote a letter to then Warden Gary Merline requesting that he be provided with footrests for his wheelchair. On May 8, 2007, Captain James D. Murphy reviewed Plaintiff's request. Captain Murphy recommended to Warden Merline that the request be denied. Captain Murphy based his recommendation on the medical staff's express opinion that the footrests were not medically necessary and Captain Murphy's determination that the removable footrests requested could easily be used as a weapon by or against Plaintiff.

---

[1] The parties dispute whether the wheelchair was provided by ACJF or whether it came with Plaintiff when he was transferred from New Jersey State Prison.

On June 4, 2007, Defendant Eric Nilson, a correctional sergeant at ACJF, attempted to temporarily place another inmate into Plaintiff's cell because there were no vacant cells in the Medical Unit. Plaintiff protested, and Sergeant Nilson ordered Plaintiff to lock into his cell. Shortly thereafter, Sergeant Nilson took control of Plaintiff's wheelchair and moved him into his cell. The parties dispute the way in which this movement occurred. For his part, Plaintiff alleges that Sergeant Nilson pushed him forward at a high rate of speed, forcing him violently into his bed, causing bruising to his legs and exacerbating his cardiac problem.

Shortly after the incident, Plaintiff complained to guards of chest pain. Sergeant Nilson and another officer escorted Plaintiff to admissions for evaluation, during which time Plaintiff and Sergeant Nilson exchanged heated words. Plaintiff was examined by medical personnel, and it was determined that his vital signs were normal. Accordingly, no treatment was rendered.

This was not the only time Plaintiff has complained to medical personnel at ACJF about his difficulty breathing. Although the precise dates are unclear, Plaintiff alleges that on at least one other occasion he complained of chest pain to Defendant Dr. Inez Hubbard. He claims that Dr. Hubbard examined his vital signs and told him that his chest was clear and that he did not have asthma. Plaintiff retorted that he had a prescription for asthma medication on file at the Absecon Shop Rite and proceeded to complete a medical release form so that ACJF could fill his prescription. Although ACJF currently provides Plaintiff with asthma medication, he claims that Dr. Hubbard never followed through with his request.

On August 14, 2009, Plaintiff filed the instant Complaint. Plaintiff alleges that Defendants have denied him constitutionally mandated living conditions and medical treatment and have handled him with constitutionally excessive force.

## II. LEGAL STANDARD

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could find for the non-moving party." Anderson v. Liberty Lobby, Inc, 477 U.S. 242, 248 (1986). When the Court weighs the evidence presented by the parties, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor." Id. at 255.

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment. In re Bressman, 327 F.3d 229, 237 (3d Cir. 2003) (quoting Celotex, 477 U.S. at 331 (1986) (Brennan, J., dissenting)). The moving party may satisfy this burden by either (1) submitting affirmative evidence that negates an essential element of the nonmoving party's claim; or (2) demonstrating to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's case. Id. at 331.

Once the moving party satisfies this initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). To do so, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Furthermore, "[w]hen opposing summary judgment, the nonmovant may not rest upon mere allegations, but rather must 'identify

those facts of record which would contradict the facts identified by the movant.'" Corliss v. Varner, 2007 WL 2709661, at *1 (3d Cir. Sept. 17, 2007) (quoting Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co., 311 F.3d 226, 233 (3d Cir. 2003)).

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. Credibility determinations are the province of the factfinder, not the district court. BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

### III. ANALYSIS

To succeed on a claim brought pursuant to 42 U.S.C. § 1983, a plaintiff must prove (1) a violation of a right secured by the Constitution or laws of the United States; and (2) that the alleged deprivation was committed or caused by a person acting under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

The Fourteenth Amendment prohibits the government from punishing pre-trial detainees prior to adjudication of guilt. Bell v. Wolfish, 441 U.S. 520, 535-36 (1979). The Third Circuit has interpreted this to mean that "pretrial detainees are entitled to at least as much protection as convicted prisoners and that decisions interpreting the Eighth Amendment serve as 'useful analogies.'" Boring v. Kozakiewicz, 833 F.2d 468, 472 (3d Cir. 1987) (quoting Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 1080 (3d Cir. 1976)).

Plaintiff argues that Defendants have constitutionally punished him prior to an adjudication of guilt by (1) exposing him to restrictive detention conditions; (2) depriving him of

adequate medical care; and (3) handling him with an excessive amount of force.

### A.     Prison Conditions

Plaintiff argues that he has been denied adequate living conditions by virtue of being (1) confined to his small cell for eighteen hours a day; (2) forced to temporarily share his quarters with other inmates; (3) denied employment opportunities; (4) denied recreational opportunities; (5) forced to pay the rates established by ACJF's sole telephone service provider; and (6) forced to pay a monthly fifty dollar housing fee.

To determine whether prison conditions amount to punishment, the Third Circuit asks (1) "whether any legitimate purposes are served by these conditions," and (2) "whether these conditions are rationally related to these purposes." Union County Jail Inmates v. DiBuono, 713 F.2d 984, 992 (3d Cir. 1983). "In assessing whether the conditions are reasonably related to the assigned purposes," the Third Circuit asks "whether these conditions 'cause [inmates] to endure [such] genuine privations and hardships over an extended period of time,' that the adverse conditions become excessive in relation to the purposes assigned for them." Id. (alterations in the original) (citing Bell v. Wolfish, 441 U.S. 520, 542 (1979)).

In this case, Plaintiff has not produced evidence that the conditions to which he was exposed were created for an improper purpose or were excessive in relation to that purpose. Although Plaintiff complains of being required to remain in his cell for eighteen hours at a time, he does not offer any evidence to dispute the fact that the location of the Medical Unit sometimes requires a lock down to safely and securely accommodate prisoner movements. Nor, incidently, does Plaintiff dispute the fact that, as a resident with special medical needs housed in the Medical Unit, he is one of the recipients of the security so purchased. Finally, Plaintiff does not appear to

dispute the fact that he has contributed, in part, to the duration of his cell confinement by failing to follow the basic rules of the facility. (See, e.g., Defs.' Ex. D, E) (plaintiff's disciplinary history). As the Supreme Court has noted, a prison has "legitimate interests that stem from its need to manage the facility in which the individual is detained." Bell, 441 U.S. at 540. Such interests may justify conditions that are "discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial." Id. Thus, the Court concludes that Plaintiff's evidence on this point shows, at most, justified discomfort.

Plaintiff also complains that, from time to time, he is forced to share his small quarters with other inmates. Plaintiff does not, however, offer evidence that Defendants' decision to temporarily house other inmates in his cell was motivated by a purpose other than the redistribution of prison resources to deal with increased demand for housing in the Medical Unit. It is well-settled that double-celling pretrial detainees for short periods of time does not constitute punishment of a constitutional dimension. See Crouch v. Mulvihill, No. 07-0054, 2007 WL 1657187, at *4 (D.N.J. June 4, 2007) (citing Bell, 441 U.S. 520). Likewise, Plaintiff's complaints about not being able to use the handicapped shower, recreational facilities, or employment services also fail to rise to the level of constitutional punishment. It is clear from his deposition testimony, that the prison does not deny Plaintiff these opportunities so much as Plaintiff chooses to forgo them because he does not find them sufficiently convenient. This Court notes, however, that "[t]he Constitution 'does not mandate comfortable prisons.'" Bond v. Taylor, No. 07-6128, 2009 WL 2634627, at *3 (D.N.J. Aug. 24, 2009) (quoting Rhodes v. Chapman, 452 U.S. 337, 349 (1981)).

Neither does ACJF's failure to provide alternative telephone service providers or its

requirement that inmates pay a fifty dollar monthly housing fee amount to constitutional punishment. Although Plaintiff would prefer to pay the lower rates that increased competition might yield, "'[t]here is no authority for the proposition that prisoners are entitled to a specific rate for their telephone calls.'" Boyer v. Taylor, No. 06-694, 2007 WL 2049905, at *9 (D. Del. Jul. 16, 2007) (mem.) (quoting Johnson v. California, 207 F.3d 650, 656 (9th Cir. 2000)). Further, Plaintiff has come forward with no evidence tending to show that the rates charged are unduly oppressive. Indeed, Plaintiff does not appear to dispute that the telephone service provider contract was adopted following a competitive bidding process or that the same telephone provider is used by the State of New Jersey Department of Corrections. Finally, Plaintiff's argument that he is constitutionally punished by the imposition of a fifty dollar monthly housing fee is foreclosed by the Third Circuit's decision in Tillman v. Lebanon County Corr. Facility, 221 F.3d 410 (3d Cir. 2000). Accordingly, entry of summary judgment for Defendants is appropriate on these claims.

  **B. Medical Care**

  Plaintiff contends that he has been denied adequate medical care by virtue of being (1) denied footrests for his wheelchair; and (2) denied treatment and medication for his chest pain.

  The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. Estelle v. Gamble, 429 U.S. 97, 103-04 (1976). In order to show a violation of his right to adequate medical care, an inmate must prove: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. Id. at 106.

  The first prong of Estelle is an objective one. "Because society does not expect that

prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" Hudson v. McMillian, 503 U.S. 1, 9 (1992). Serious medical needs include those that have been diagnosed by a physician as requiring treatment or that are so obvious that a lay person would recognize the necessity for doctors' attention, and those conditions which, if untreated, would result in lifelong handicap or permanent loss. See Monmouth County Corr. Institute Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).

The second prong of Estelle is a subjective one. Deliberate indifference is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk or harm. See Farmer v. Brennan, 511 U.S. 825, 836, 837-38 (1994). Furthermore, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference. See Andrews v. Camden County, 95 F. Supp. 2d 217, 228 (D.N.J. 2000) (citing Peterson v. Davis, 551 F. Supp. 137, 145 (D. Md. 1982), aff'd, 729 F.2d 1453 (4th Cir. 1984)). Similarly, "mere disagreements over medical judgments do not state Eighth Amendment claims." White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990). "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment . . . [which] remains a question of sound professional judgment. Implicit in this deference to prison medical authorities is the assumption that such informed judgment has, in fact, been made." Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotation and citation omitted). Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation. See Estelle, 429 U.S. at 105-06.

"Where prison authorities deny reasonable requests for medical treatment, however, and such denial exposes the inmate 'to undue suffering or the threat of tangible residual injury,' deliberate indifference is manifest. Similarly, where 'knowledge of the need for medical care [is accompanied by the] . . . intentional refusal to provide that care,' the deliberate indifference standard has been met." Monmouth County Corr. Institute Inmates, 834 F.2d at 346 (citations omitted).

Applying these principles to the instant case, Plaintiff has not set forth facts sufficient to permit the inference that any Defendant was deliberately indifferent to a serious medical need. Plaintiff has not come forward with facts tending to show that footrests are medically necessary or were ever prescribed to him by a medical authority.[2] To the contrary, the medical staff at ACJF determined that the requested footrests would have no therapeutic effect, and instead, recommended strengthening exercises. At most, then, Plaintiff appears to disagree about the particular course of his treatment, which is insufficient to constitute constitutional injury. See id.

Additionally, Plaintiff cannot show that Defendants were deliberately indifferent to his condition as the record undisputably shows that Plaintiff's request was reviewed by prison authorities days after it was received and that the denial was based on medical opinion and a determination that detachable footrests posed a security risk. To prove deliberate indifference, a plaintiff needs to show more than mere disagreement with a reasoned decision made by prison

---

[2] On March 5, 2009, and without leave of Court, Plaintiff filed a sur-reply brief in which he requested production of ACJF's purchase records as well as for the criminal background records of all defendants and witnesses in the case. The Court notes that parties are not authorized to file sur-replies without leave of court. L. Civ. R. 7.1(d)(6). Accordingly, and because the Court does not rest its decision on the origin of Plaintiff's wheelchair or the criminal history (or lack thereof) of any defendant or witness, the Court will not address these arguments further.

authorities. See Bell, 441 U.S. at 547 (citing Jones v. North Carolina Prisoners' Labor Union, 433 U.S. 119, 128 (1977) ("Prison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."). Accordingly, entry of summary judgment for Defendants is appropriate.

    **C.    Excessive Force**

Plaintiff contends that he has been treated with excessive force by virtue of the way Sergeant Nilson handled his person on June 4, 2007.

The Eighth Amendment forbids "'unnecessary and wanton infliction of pain.'" Hudson, 503 U.S. at 5 (citing Whitley v. Albers, 475 U.S. 312 (1986)). In order to establish a claim for excessive use of force, a plaintiff must show "that the force was not applied in a good-faith effort to maintain or restore discipline, but that it was maliciously and sadistically used to cause harm." Wilson v. Horn, 971 F. Supp. 943, 948 (E.D. Pa. 1997) (mem.) The plaintiff must also demonstrate that the seriousness of the force rises above the de minimis level or is "repugnant to the conscience of man." Id. (citing Hudson, 503 U.S. at 10).

Applying these principles to the instant case, Plaintiff has not set forth facts sufficient to permit the inference that Sergeant Nilson's conduct violated the Eighth Amendment. It is undisputed that Sergeant Nilson removed Plaintiff to his cell in an attempt to maintain order and security. Thus, even if Plaintiff's account of events is believed, Sergeant Nilson did no more than to cause Plaintiff to fall sharply onto his own bed. Clearly, "[n]ot every push or shove even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." Hudson, 503 U.S. at 9 (quoting Johnson v. Glick, 481 F.2d 1028, 1033

11

(3d Cir. 1973)).  Moreover, ACJF medical staff examined Plaintiff shortly after the incident and discovered no medical injuries, and Plaintiff admits that he currently suffers no ill-effects.  Although by no means dispositive, the extent of injuries suffered is relevant to the Eighth Amendment inquiry.  See Wilson, 971 F. Supp. at 948 (citing Hudson, 503 U.S. at 7).  In sum, if Plaintiff's version of the story is fully believed, Sergeant Nilson may have acted inappropriately, but his actions do not rise to the level of constitutional violation.  Accordingly, entry of summary judgment for Defendants is appropriate.

### IV.   CONCLUSION

Based upon the foregoing, the Court will grant summary judgment to both the County Defendants and the CFG Defendants on all claims contained in Plaintiff's Complaint.


Dated:   9-29-2009               /s/ Robert B. Kugler
                                 ROBERT B. KUGLER
                                 United States District Judge